EXHIBIT 1

# STATE OF NORTH CAROLINA

PITT County

File No. 22 CVS 494

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff**<br>Anthony Justin Little | **CIVIL SUMMONS**<br>☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| **Address**<br>c/o Wayne Hardee Law, PLLC | |
| **City, State, Zip**<br>1609 W. Arlington Blvd. Ste. 105 Greenville NC 27834 | G.S. 1A-1, Rules 3 and 4 |
| **VERSUS** | |
| **Name Of Defendant(s)**<br>RENE HERSE CYCLES LTD, d/b/a<br>RENE HERSE CYCLES | **Date Original Summons Issued**<br><br>**Date(s) Subsequent Summons(es) Issued** |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| 2442 NW Market Street #426<br><br>Seattle WA 98107 | |

⚠ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

¡**IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| G. Wayne Hardee<br>Wayne Hardee Law, PLLC<br>1609 W. Arlington Blvd., Suite 105<br>Greenville NC 27834 | 2/28/2022 | 1:46 ☐ AM ☒ PM |
| | Signature<br>Mary Lynn Craver | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | | | Name Of Defendant |
|---|---|---|---|---|
| | | ☐ AM | ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | | | Name Of Defendant |
|---|---|---|---|---|
| | | ☐ AM | ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| | |
| Date Of Return | County Of Sheriff |
| | |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE
   FILED   SUPERIOR COURT DIVISION
PITT COUNTY    2022 FEB 28 P 1:46   FILE NO: 22 CVS 494

ANTHONY JUSTIN LITTLE,   )
   Plaintiff  )
                     )
vs.  )   **COMPLAINT**
                     )
RENE HERSE CYCLES LTD, d/b/a  )
RENE HERSE CYCLES  )
   Defendant  )
                     )

Plaintiff, ANTHONY JUSTIN LITTLE, by and through undersigned counsel, hereby alleges against Defendant, RENE HERSE CYCLES LTD d/b/a RENE HERSE CYCLES, as follows:

1. Plaintiff is a citizen and resident of Pitt County, North Carolina.

2. Defendant is a United States corporation organized and existing under the laws of the State of Washington, with its principal place of business located at 2442 NW Market Street #426, Seattle, Washington, 98107.

3. Defendant is in the business of designing, manufacturing, marketing, selling, and distributing, various components of bicycles, including but not limited to tubeless bicycle tires.

4. This Court has personal jurisdiction over Defendant because at all relevant times Defendant has engaged in substantial business activities within the State of North Carolina, by marketing, selling, and distributing its products to consumers located within the State of North Carolina, and by doing so has established sufficient minimum contacts within the State of North Carolina and has availed itself to laws of the State of North Carolina.

5. This Court has subject-matter jurisdiction over this action as the acts and omissions of Defendant directed at Plaintiff, who resides in Pitt County North Carolina, resulted in bodily injuries and damages to Plaintiff in excess of $25,0000.00.

## GENERAL ALLEGATIONS

6. This is a products liability action arising out of severe bodily injuries and property damage which Plaintiff sustained on March 9, 2019, in Pitt County, North Carolina, when a Compass Barlow Pass tubeless bicycle tire designed, manufactured, marketed, and sold by Defendant, separated from the rim of Plaintiff's bicycle while Plaintiff

was riding, which is herein after referred to as a "blow-off" and resulted in Plaintiff crashing his bike on the asphalt.

7. Plaintiff's injuries and property damage were the direct and proximate result of Defendant's negligence in designing and manufacturing its tubeless tire in an unreasonable manner creating a risk of harm to the consuming public, Defendant's negligence in failing to give proper instructions for use of its tubeless tire, and Defendant's negligence in failing to adequately warn consumers of the unreasonably dangerous condition and substantial risk of bodily injury created by the use of its tubeless tire on hookless rims.

8. Defendant, through its principal, agents and/or employees, is aware that in general, the thinner casings of a bicycle tire, as compared to that of an automobile or motor cycle tire, allow the bicycle tire to stretch under pressure leading to a higher risk of tire blow-offs when tubeless tires are inflated to higher pressures per square inch (PSI).

9. Defendant, through its principal, agents and or employees, is aware that to prevent or reduce the risk of blow-offs, bicycle wheels where originally manufactured with hooks on the rims of the wheel to hold the tire mounted on the rims of the wheel in place.

10. Defendant, through its principal, agents and/or employees, is also aware that over the course of the years, many bicycle wheels are now manufactured without hooks on the rims (or with hookless rims) and that many avid cyclists of all types, have switched to riding on wheels with hookless rims.

11. Defendant, through its principal, agents and/or employees, is aware that at all relevant times alleged herein, many bicycle wheels, especially those manufactured for off-road use or use at high speeds, are manufactured with hookless rims and for use with tubeless tires to optimize tire and rim engagement and therefore heighten the consumers performance and experience.

12. The Compass Barlow Pass bicycle tire is a tubeless tire that Defendant has designed, manufactured, and sold since 2014. The Compass Barlow Pass tubeless tire is a designed, manufactured, and marketed by Defendant to the consuming public, as a dual purpose or hybrid tire that can be used for high performance riding both on and off the roadway.

13. Specifically, Defendant markets the Compass Barlow Pass tubeless tires on its website as "the perfect tire for rides that combine equal portions of pavement and gravel; light enough so your bike retains the nimble fees of a road bike, yet 38mm wide to give you amazing traction on pavement and off. The standard casing is our most affordable option: comfortable and fast, yet also strong to withstand considerable abuse."

2

14. Defendant, through its principal, agents and/or employees, is aware that its Compass Barlow Pass tubeless tires are used by consumers when riding a bicycle in rough terrain or at high speeds.

15. Defendant, through its principal, agents and/or employees, is aware that many consumers of the Compass Barlow Pass install and use the tubeless tires on wheels that have hookless rims.

16. Upon information and belief, at times subsequent to the introduction of Defendant's Compass Barlow Pass tubeless tires and prior to Plaintiff's blow-off alleged herein, there were other cyclists who used Defendant's tubeless tires with hookless rims and experienced blow-offs causing crashes similar to that of Plaintiff.

17. Upon information and belief, one or more of these cyclists who experienced a blow-off similar to that of Plaintiff's when using Defendant's tubeless tires on hookless rims, had contacted Defendant through its principal, agent, and/or employees, prior to March of 2019, to notify Defendant that their use of Defendant's tubeless tire in a manner consistent with the product's intended use resulted in a blow-off and crash.

18. Upon information and belief, Defendant knew or should have known that the Compass Pass Barlow tubeless tire when installed and used on hookless rims creates a heightened risk of blow-offs on rough terrain or at high speeds, and thus constitutes an unreasonable danger and substantial risk of bodily injury to the consumers of Defendant's product.

19. Upon information and belief, when the product designed, manufactured, sold, and distributed by Defendant was installed on Plaintiff's bicycle, Defendant knew or should have known that it's product, when installed and used on hookless rims, created an unreasonably dangerous condition and a substantial risk of bodily injury yet Defendant failed to provide adequate warnings of use of its product with hookless rims.

20. Plaintiff is an experienced cyclist. At all relevant times alleged herein, Plaintiff was meticulous in ensuring that all components of his bicycle were used in proper manner, within manufacturer recommended specifications.

21. Prior to purchasing the Compass Barlow Pass tubeless tires designed, manufactured, marketed, and distributed by Defendant, Plaintiff checked the specifications advertised on Defendant's website in an attempt to ensure that he was purchasing a product with compatible design for his rims, as well as a product that met the correct specifications of his bicycle rim.

22. At the time, Defendant's website did not contain adequate warnings that the Compass Barlow Pass tubeless tire should not be used with hookless rims.

23. Based on the information provided by Defendant's website, Plaintiff purchased the Compass Barlow Pass 38cc tubeless tires, which were designed, manufactured, and marketed, sold, and distributed by Defendant. Defendant shipped Plaintiff's Compass Barlow Tires to North Carolina.

24. Upon receipt of the Compass Barlow Pass 38cc tubeless tires designed, manufactured by Defendant, the tires were installed on Plaintiff's bicycle wheels with hookless rims.

25. Upon information and belief, the packing and instructions for installation and use that accompanied the Compass Barlow Pass tubeless tires did not contain adequate warnings that installation of the product on hookless rims created a substantial risk of bodily injury.

26. At no point prior to installation of Defendant's tubeless tires, was Plaintiff aware, nor did he receive from Defendant, directly or indirectly, adequate warnings that the Compass Barlow Pass tubeless tires should not be installed and used with hookless rims.

27. On March 9, 2019, Plaintiff was riding his bicycle on a paved roadway in Pitt County North Carolina with Defendant's product, the Compass Pass Barlow tubeless tires, inflated within the manufacturer recommended specifications at that time.

28. While Plaintiff was riding his bicycle at approximately 23 miles per hour on dry asphalt, the Compass Barlow Pass tubeless tire designed, manufactured, and sold by Defendant separated from the rim of Plaintiff's bicycle causing a spontaneous blow-off which sent Plaintiff immediately crashing to the asphalt.

29. As a result of the spontaneous blow-off, Plaintiff sustained severe and permanent bodily injuries including but not limited to a torn hamstring, bruising, and abrasions and other permanent injuries in the form of scarring, disfigurement, and discoloration to Plaintiff's body.

30. As a result of the blow-off and crash, Plaintiff also sustained property damage to his bicycle and/or bicycle component parts, as well as his personal belongings including but not limited to clothing that was torn when he his body hit and tumbled across the asphalt.

31. Prior to beginning his ride on the morning on March 9, 2019, and at times during his ride and prior to the blow-off and crash, Plaintiff checked the pressure in the Compass Barlow Pass tubeless tires to ensure that the tires were inflated to specifications recommended by Defendant for pressure per square inch (PSI).

32. Due to the previous blow-offs experienced by consumers using Defendant's product with hookless rims, Defendant knew or should have known at the time Defendant distributed it's product to Plaintiff, that the Compass Barlow Pass tubeless tire when

used or installed on a hookless rim created an unreasonably dangerous condition and substantial risk of bodily injury to the consuming public, including but not limited to Plaintiff.

33. Notwithstanding Defendant's knowledge that tubeless tires are used by cyclists in rough terrain and at high speeds, and previous consumers complaining of blow-offs caused by using the Compass Barlow Pass tubeless tires installed on wheels with hookless rims, Defendant designed, manufactured, marketed, sold, and distributed the Compass Barlow Pass tubeless tires used by Plaintiff, without providing adequate warnings, directly or indirectly, that the Compass Barlow Pass tires should not be installed and used on a bicycle wheel with a hookless rim.

34. Had Defendant provided adequate warnings of the heightened risk of blow-offs created by Compass Pass Barlow tubeless tires when used with hookless rims, Plaintiff would not have had the Compass Barlow Pass tubeless tires designed, manufactured, sold and distributed by Defendant installed on his bicycle and would not have been riding his bicycle with Defendant's product mounted on hookless rims on March 9, 2019.

35. Defendant's negligence in failing to provide adequate warnings of unreasonably dangerous condition and substantial risk of bodily injury created by installation and use of its product on hookless rims was the direct and proximate cause of the bodily injuries and property damage that Plaintiff sustained on March 9, 2019.

36. Defendant was negligent in failing to provide consumers with adequate warnings of the increased risk of a blow-off with use of a tubeless tire, despite the knowledge by its principal, agents, and/or employees, that tubeless tires are commonly used by bicycle riders in rough terrains or at high speeds.

37. Defendant was negligent in failing to provide Plaintiff with adequate warnings of the increased risk of a blow-off with use of its Compass Barlow Pass tubeless tire on hookless rims, despite numerous other consumers having previously notified Defendant that they had experienced blow-offs when using Defendant's product on hookless rims.

38. Shortly after the Plaintiff's crash alleged above, Plaintiff notified Defendant that he sustained bodily injuries and property damage as a result of the spontaneous blow-off when using the Compass Pass tubeless tires designed and manufactured by Defendant.

39. At Defendant's request, and only after Defendant confirmed that the tire would be returned to Plaintiff in an unaltered condition, Plaintiff sent the tire to Defendant for inspection. After completion of Defendant's inspection and testing of the tire and after Defendant notified Plaintiff of the results of its investigation, Defendant notified Plaintiff that Defendant believed had been discarded when the office was cleaned and

5

so Defendant would be unable to return the tire to Plaintiff as Defendant had previously promised.

40. Defendant's destruction or loss of the tire, with knowledge of Plaintiff's potential product's liability claim against Defendant prevents Plaintiff from presenting relevant evidence that could potentially be damaging to Defendant's defense.

41. Defendant's acts or omissions to preserve the tire after Plaintiff entrusted custody and control of the tire with Defendant based on Defendant's promises and assurances that the evidence would be preserved constitutes obstruction of justice and a violation of the North Carolina Unfair and Deceptive Trade Practices Act.

## **FIRST CAUSE OF ACTION**
N.C. Gen Stat. 99B-5: Failure to Warn

42. Plaintiff repeats, re-alleges and incorporates herein by reference, all of the preceding allegations as though set forth in full.

43. Defendant had an established duty to warn of the unreasonably dangerous condition in using Defendant's Compass Barlow Pass tubeless tire.

44. Due to the previous complaints of blow-offs by other consumers when using the Compass Barlow Pass tubeless tires with hookless rims, Defendant knew or should have known of the dangers of using the Compass Pass Barlow tubeless tires with hookless rims.

45. Defendant was aware or in the exercise of ordinary care should have been aware that the Compass Barlow Pass tubeless tires when installed on hookless rims, posed a substantial risk of harm to a reasonably foreseeable user or consumer.

46. Defendant failed to take reasonable steps to give adequate warning and/or instructions that the Compass Barlow Pass tubeless tires should not be installed or used on bicycles wheels with hookless rims.

47. Defendant's failure to take reasonable steps to give adequate warning and/or instructions that the Compass Barlow Pass tubeless tires should not be installed or used on bicycle wheels with hookless rims was the direct and proximate cause of the bodily injuries and damages sustained by Plaintiff.

48. At the time Compass Barlow Pass tubeless tires used by Plaintiff left the control of Defendant, the product without adequate warning or instruction not to use the product with hookless rims, created an unreasonably dangerous condition in that Defendant knew the product was used in rough terrain or high speeds and by consumers using the product on hookless rims that created an increased risk of a blow-off, thus posing a substantial risk of harm to a reasonably foreseeable claimant.

6

49. Alternatively, after the Compass Pass tires used by Plaintiff left the control Defendant became aware or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user and failed to take reasonable steps to give adequate warning or instruction or to take reasonable steps to warn Plaintiff under the circumstances.

**SECOND CAUSE OF ACTION**
N.C. Gen. Stat. § 99B-6: Inadequate Design

50. Plaintiff repeats, re-alleges and incorporates herein by reference, all of the preceding allegations as though set forth in full.

51. Defendant's Compass Barlow Pass tubeless bicycle tires were designed in a materially defective manner.

52. In the normal course of business, Defendant designed, manufactured, marketed, distributed, sold, and supplied, Compass Barlow Pass tubeless bicycle tires, and which were designed and manufactured by Defendant with the intent that the same may be installed bicycles that have wheels with hookless rims.

53. The tubeless bicycle tires designed, manufactured, marketed, distributed, sold, and supplied and/or placed in the stream of commers by Defendant was expected to and did reach consumers that have bicycles with hookless rims, including Plaintiff, without any alterations or changes.

54. The tubeless tires designed and manufactured by Defendant and installed on Plaintiff's bicycle at the time of the crash on March 9, 2019 were defective in design in at least the following respects:

    a. When the product left the hands of Defendant, the Compass Barlow Pass tubeless tires designed and manufactured for compatibility and installation on a bicycle with wheels that had hookless rims was unreasonably dangerous and created substantial risk of bodily injury to the extent beyond that which could reasonably be contemplated by the products users;

    b. Any benefit of the Compass Barlow Pass tubeless tire to its intended users was outweighed by the serious and undisclosed risk of installation and use of the product on hookless rims.

    c. The design of the Compass Barlow Pass tubeless tire compatible with installation on hookless rims and intended for use at high speeds yet unable to maintain the manufacturer recommended specifications for pressure per square inch to prevent a blow-off, was so unreasonably designed that a reasonable consumer or user aware of the relevant facts, would not have used

7

or installed Compass Barlow Pass tubeless tires on a bicycle with hookless rims.

55. The Compass Barlow Pass tubeless designed and manufactured and advertised to be compatible bicycle wheels with hookless rims, and advertised for a dual-purpose use, were defectively designed at the time the product distributed by Defendant or left Defendant's control because the tires could not safely maintain the manufacture recommended specifications for PSI.

56. The foreseeable risks associated the Compass Barlow Pass tubeless tires include but are not limited to, use by consumers on a hookless rim and used at speeds which require a higher PSI than the product advertised can actually maintain, which is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

57. The defective and unreasonably dangerous design, manufacturing, and marketing of Defendant's Compass Barlow Pass tires, specifically the Compass Barlow Pass tubeless 38cc tires, was the direct and proximate cause of Plaintiff's severe muscle and ligament injuries, as well as his property damage.

58. As a direct, legal, and proximate result of the defective and unreasonably dangerous conditions created by the Compass Pass Barlow tubeless tires capable of being installed on hookless rims, Plaintiff sustained bodily injuries and damages in a sum in excess of the jurisdictional minimum of this Court.

## THIRD CAUSE OF ACTION
Negligence

59. Plaintiff repeats, re-alleges and incorporates herein by reference, all of the preceding allegations as though set forth in full.

60. Defendant, knew or should have known that use of the Compass Barlow Pass tubeless tires inflated to a PSI within the Defendant's specifications and mounted on hookless rims created an unreasonably dangerous and unsafe condition and substantial risk of bodily injury.

61. Despite Defendant's knowledge of a dangerous and unsafe condition created by use of their product in such a manner as alleged above, Defendant failed to provide adequate warnings that use of its product with hookless rims created a dangerous and unsafe condition and posed a substantial risk of bodily harm.

62. Plaintiff sustained severe bodily injuries and other damages as a direct and proximate result of the acts and/or omissions of Defendant in failing to provide adequate warnings and instructions for use of the Compass Pass Barlow tubeless tire,

8

63. Plaintiff damages to be proven at trial are in excess of $25,000.00.

## **FOURTH CAUSE OF ACTION**
Violation of the NC Unfair and Deceptive Trade Practices Act and Obstruction of Justice

64. Plaintiff repeats, re-alleges and incorporates herein by reference, all of the preceding allegations as though set forth in full.

65. Under North Carolina common law, it is an offense to do any act which prevents, obstructs, impedes, or hinders public or legal justice.

66. Under North Carolina General Statutes, Chapter 75 sections 75-2 and 75.16, any act, combination in the form of trust, or conspiracy in restraint of trade or commerce which also violates the principles of common law constitutes a violation of the North Carolina Unfair and Deceptive Trade Practices Act and any person who is injured by such an act and recovers damages against a defendant, shall be entitled to an award of treble damages.

67. Following Plaintiff's crash caused by the blow-off of Defendant's tire from the rim of Plaintiff's bicycle, Plaintiff contacted Defendant's customer service department on March 18, 2019, to notify Defendant of the blow-off and the injuries and damages he sustained as a result thereof.

68. An agent or employee of Defendant asked Plaintiff for the specifications for the rim and tire combination Plaintiff was using at the time of the blow-off.

69. Plaintiff provided Defendant's agent or employee with the requested information, specifically notifying Defendant that he had used the tires on hookless rims.

70. Defendant's agent and or employee told Plaintiff that Defendant would need to inspect the tire to assist in their investigation to determine the cause of the crash.

71. Plaintiff agreed to assist in the investigation and allowed Defendant and/or it's agent or employees to inspect the tire at Plaintiff's home.

72. An agent or employee of Defendant responded that Defendant would need Plaintiff to ship the tire to Defendant's principal place of business for inspection.

73. Plaintiff agreed to ship the tire to Defendant's place of business for inspection so long as the tire was not destroyed or altered in any way during their investigation and that the tire would be returned to Plaintiff upon completion of Defendant's inspection. Plaintiff specifically requested that the agent or employee of Defendant confirm that the tire would not be destroyed or altered in anyway and would be returned to Plaintiff after completion of Defendant's investigation.

74. The agent or employee of Defendant confirmed that the tire would not be destroyed or altered in any way and suggested that Plaintiff write his initials on the inside of the tire to ensure the integrity of the investigation. Accordingly, Plaintiff wrote his initials on the inside of the tire and shipped the tire to Defendant using the pre-paid shipping label Defendant had provided to Plaintiff.

75. In April of 2019, Defendant updated the information on its website to state that hookless rims are not recommended for use with Rene Herse.

76. Upon information and belief, this is the first occasion that Defendant notified consumers and potential consumers that Defendant's tires were not recommended for use with hookless rims.

77. On May 3, 2019 Plaintiff contacted the agent or employee of Defendant to ensure that Defendant received the tire and check on the status of the investigation.

78. On May 7, 2019, the agent or employee of Defendant replied to Plaintiff's email and confirmed that Defendant had received the tire with Plaintiff's initials on the inside and were working on the final stages of the investigation.

79. On May 27, 2019, the employee or agent of Defendant contacted Defendant and said that Defendant's investigation revealed no indication that the blow-off occurred because of a defect or faulty design of the tire.

80. As it appeared that Defendant's investigation was complete, Plaintiff requested that Defendant ship the tire back to Plaintiff's home address as Defendant had previously promised to do.

81. On Friday, May 31, 2019, the agent or employee of Defendant replied to Plaintiff with the following "We will ship the tire you signed back to your home address today and I will provide a tracking number as well."

82. Later that day, the agent or employee of Defendant sent another email to Plaintiff stating that when he went to ship Plaintiff's tire, he could not locate Plaintiff's tire, and that he believed Plaintiff's tire was discarded in an office cleanup.

83. At all times that Defendant was in possession of Plaintiff's tire, Defendant knew or should have known of Plaintiff's potential claim for bodily injuries and damages against Defendant.

84. At all times that Defendant was in possession of Plaintiff's tire, Defendant had a duty to preserve the tire as evidence relevant to Plaintiff's claims for bodily injuries and damages against Defendant.

85. Defendant, with knowledge of Plaintiff's claims against Defendant for his injuries and damages, lost or destroyed Plaintiff's tire thus preventing Plaintiff from using the same as evidence against Defendant.

86. As such Defendant has caused further injury to Plaintiff by preventing Plaintiff from being able to present the tire as evidence at a trial in this matter.

87. Defendant's spoliation of evidence is a direct and proximate cause of Plaintiff's inability to present the tire as evidence in support of Plaintiff's claim against Defendant and thus constitutes obstruction of justice by Defendant.

88. Accordingly, Plaintiff is entitled to an instruction by the Judge to the Jury that the jurors may presume that the lost or destroyed tire would be damaging to Defendant's defense of Plaintiff's claims alleged herein.

89. Defendant destroying or losing the tire referenced above after Defendant had notice of Plaintiff's potential claims against Defendant was an unfair or deceptive act or practice in restraint of commerce as the destruction or loss of the tire only after Defendant's inspection and testing of the tire was complete, substantially injured Plaintiff by the following:

    a. preventing Plaintiff from having the tire inspected and tested by an independent third party;

    b. preventing Plaintiff from presenting relevant and potentially damaging evidence against Defendant a trial in this matter; or

    c. preventing Plaintiff from exposing Defendant's defective designed and manufactured tires

90. Defendant's confirmation to Plaintiff that the tire would be returned to Plaintiff after Defendant's inspection was complete and Defendant's subsequent destruction or loss of the tire only after Defendant's inspection and investigation was complete but before it was returned to Plaintiff, was an act, contract, or combination in the form of trust done in or affecting commerce in that the parties were engaged in an activity involving an exchange in which Defendant was in fact the manufacture and seller of the tire in question.

91. The deceptive act of Defendant in promising to preserve and return the tire to Plaintiff after it's inspection and investigation was complete but failing to uphold said promises to Plaintiff, is an unfair and deceptive act that has affected commerce in that it prevents Plaintiff from presenting evidence that could potentially expose Defendant's unsafe and defectively designed product causing Defendant's sales to suffer as a result thereof.

11

92. Should damages be assed against Defendant, Plaintiff is entitled to an award of treble damages and award of attorney fees and costs associated with the prosecution of this action.

## FIFTH CAUSE OF ACTION
Punitive Damages

93. Plaintiff repeats, re-alleges and incorporates herein by reference, all of the preceding allegations as though set forth in full.

94. Defendant's conduct in knowingly designing, manufacturing, marketing, selling, and distributing a product which Defendant knew had previously caused injury to consumers and created a heightened and unreasonable risk of danger to consumers when used for and in a manner consistent with its intended constitutes willful and wanton conduct in reckless disregard for the rights and safety of consumers.

95. Defendant's conduct in destroying or losing the tire in question only after Plaintiff had put Defendant on notice of his potential claims for bodily injuries and damages, and only after Defendant's inspection of the tire in question was complete constitutes willful and wanton conduct in reckless disregard for the rights of Plaintiff.

96. For the reasons set forth above, Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgement against Defendant as follows:

1. That Plaintiff have and recover against Defendant compensatory and general damages for the bodily injuries and property damages alleged herein;

2. That Plaintiff have and recover punitive damages against Defendant

3. That Plaintiff recover damages against Defendant for treble the amount fixed by verdict;

4. That Plaintiff have and recover the costs of this action, including pre-judgment interest and interest on all sums found to be due and owing, said interest accruing at the legal rate from the date of the incident.

5. That Plaintiff's attorneys' fees and costs as allowed by the North Carolina law, be taxed against Defendant;

6. That Plaintiff have a trial by jury;

12

7. That Plaintiff have such other an such other and further relief as to which Plaintiff may be entitled under the allegations set forth herein and additionally as the court deems just and proper;

This the 28th day of February, 2022

WAYNE HARDEE LAW, PLLC

*G. Wayne Hardee*
1609 W. Arlington Blvd., Suite 105
Greenville, N.C. 27834
Telephone: (252) 238-4040
N.C. State Bar No. 10353
wayne@waynehardeelaw.com
Attorney for Plaintiff

*Jeffrey J. Blick*
1609 W. Arlington Blvd., Suite 105
Greenville, N.C. 27834
Telephone: (252) 238-4040
N.C. State Bar No. 38035
jeff@waynehardeelaw.com
Attorney for Plaintiff

*William H. Reaves*
1609 W. Arlington Blvd., Suite 105
Greenville, N.C. 27834
Telephone: (252) 238-4040
N.C. State Bar No. 52358
will@waynehardeelaw.com
Attorney for Plaintiff

# VERIFICATION

NORTH CAROLINA
PITT COUNTY

Plaintiff Anthony Justin Little, being first duly sworn, deposes and says that he is the Plaintiff in the foregoing action and that the allegations set forth in the foregoing Complaint are true to the best of his knowledge and belief, except for those allegations set forth upon information and belief, and as to those allegations, he believes them to be true.

_____
ANTHONY JUSTIN LITTLE

Sworn to and subscribed before me this the 28th day of February, 2022.

_____
Notary Public

My commission expires: 9/18/2022

*[Notary Seal: MARY E STOTT, Notary Public, Wayne County, North Carolina]*